1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11

JASON SMITH,

            Plaintiff,

12

    v.

13

14

A. TAMAYO, et al.,

15

            Defendants.

16

Case No. 19-00537 BLF (PR)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT; REFERRING CASE
TO SETTLEMENT PROCEEDINGS;
STAYING CASE; INSTRUCTIONS
TO CLERK**

(Docket No. 16)

17

18

       Plaintiff, a state prisoner at the Correctional Training Facility ("CTF"), filed the

19

instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against CTF prison officials

20

and the Chief of the Office of Appeals in Sacramento.  Dkt. No. 1.[1]  Finding the complaint

21

stated cognizable claims, the Court ordered service upon Defendants.  Dkt. No. 4.

22

Defendants M. Voong, M. Atchley, Y. Friedman, and A. Tamayo filed a motion for

23

summary judgment based on various grounds, including failure to exhaust administrative

24

remedies, on the merits, and qualified immunity.  Dkt. No. 16.[2]  Plaintiff filed an

25

26

[1] All page references herein are to the Docket pages shown in the header to each document
and brief cited, unless otherwise indicated.

27

28

[2] In support of their motion, Defendants provide the declarations from Defendant M.
Atchley, Dkt. No. 16-1, Defendant A. Tamayo, Dkt. No. 16-2, Defendant Y. Friedman,
Dkt. No. 16-3, J. Vila (the litigation coordinator for the Office of Appeals) with exhibits,

opposition, Dkt. No. 18, exhibits in support, Dkt. No. 18-1, and an affidavit, Dkt. No. 18-2. Defendants filed a reply, Dkt. No. 22, and a declaration from counsel Ryan Gille with an exhibit in support, Dkt. No. 22-1.  For the reasons discussed below, Defendants' motion is **GRANTED IN PART and DENIED IN PART.**

## DISCUSSION

### I.    Statement of Facts[3]

This action is based on Plaintiff's claim that he is a practicing Rastafarian and needs a special diet in accordance with his religious beliefs.  Smith Decl. ¶¶ 2, 3; Dkt. No. 18-2. He applied for a kosher diet at CTF and was denied.  Dkt. No. 1 at 9.  Defendant M. Atchley was the Chief Deputy Warden at CTF during the relevant period.  Atchley Decl. ¶ 1; Dkt. No. 16-1.  Defendant A. Tamayo is the Community Resources Manager at CTF. Tamayo Decl. ¶ 1; Dkt. No. 16-2.  Defendant Y. Friedman is a Jewish Rabbi at CTF. Friedman Decl. ¶ 1; Dkt. No. 16-3.  Defendants Atchley, Tamayo, and Friedman are members of CTF's Religious Review Committee ("RRC").  Defendant M. Voong was the Chief of the Office of Appeals in Sacramento during the relevant period.  Voong Decl. ¶ 1; Dkt. No. 16-6.

### A.    Plaintiff's Application for Kosher Diet

Inmate applications to the Religious Diet Program are guided by the Cal. Code Regs. tit. 15, § 3054 et seq.  Tamayo Decl. ¶ 2.  The policies and procedures related to the Kosher Diet Program ("KDP") are set out in § 3054.2.  Inmates may seek participation in the KDP by submitting to any chaplain a CDCR Form 3030, Religious Diet Request.  *Id.* ¶ 5; Friedman Decl. ¶ 3; Cal. Code Regs. tit. 15, § 3054.4(a).  As part of the process, an inmate is interviewed by a chaplain to assist in determining eligibility for a religious diet.

---

Dkt. No. 16-4, A. Steiber (a Correctional Food Manager for the CDCR), Dkt. No. 16-5, and Defendant M. Voong, Dkt. No. 16-6.

[3] The following facts are undisputed unless otherwise indicated.

2

Tamayo Decl. ¶ 2.  Form 3030 consists of three parts, with the inmate filing out Part I, a chaplain or designee completing Part II after interviewing the inmate, and Part III is completed by the RRC.  *Id*. ¶ 5.  According to the regulations, any chaplain or the RRC shall determine inmate entry into the KDP upon review of Form 3030.  Cal. Code Regs. tit. 15, § 3054.2(g)(2).  Only the RRC may make the determination to deny the CDCR Form 3030.  Cal. Code Regs. tit. 15, § 3054.2(g)(3).  The RRC meets once a month to examine inmate applications to the Religious Diet Program.  Tamayo Decl. ¶ 2; Atchley Decl. ¶ 6.  In determining eligibility, the RRC considers the inmate's responses to a chaplain interview, their past food purchases, and any supporting documentation provided by an inmate.  Atchley Decl. ¶ 6.

On April 1, 2018, Plaintiff submitted a CDCR Form 3030 requesting to be placed on the KDP.  Dkt. No. 1 at 26-28; Dkt. No. 16-1 at 18; Dkt. No. 18-2 at 2.  Plaintiff's stated reason for requesting the KDP was to satisfy his religious beliefs as a member of the House of the Lion of Judah, also known as Rastafarian.  *Id.*  Plaintiff was interviewed by Pastor B.D. Min on April 16, 2018, and the application was forwarded to the RRC for review.  Dkt. No. 16-1 at 20; Dkt. No. 18-2 at 2.

The RRC's next monthly meeting took place on June 28, 2018.  Atchley Decl., Ex. A at 5; Dkt. No. 16-2 at 4.  While Defendant Atchley was present along with other RRC members not a party to this action, neither Defendants Tamayo nor Friedman attended that meeting.  Tamayo Decl. ¶ 4, Ex. A at 1; Friedman Decl. ¶ 4.  Plaintiff's application was discussed and denied.  Tamayo Decl. ¶ 3, Ex. A.  Plaintiff's responses to interview questions six and seven, as well as non-kosher food purchases in April 2018, were listed as the basis for the denial.  Dkt. No. 1 at 28; Dkt. No. 16-2 at 5.  Plaintiff's answers to questions 6 and 7 on his application indicated that he needed to avoid food made with preservatives or additives, and that he did not eat meat.  Dkt. No. 16-4 at 31.  According to A. Steiber, the Correctional Food Manager for the CDCR, inmates who participate in the KDP receive prepackaged kosher meals prepared by an off-site vendor, and because they

3

1  are prepacked off-site, the kosher meals have the greatest amount of preservatives when

2  compared with normal (mainline) meal, vegetarian, and halal diets.  Steiber Decl. ¶ 3.

3  Defendant Tamayo completed Part III of Plaintiff's Form 3030 on July 22, 2018, which

4  informed Plaintiff that the application was denied by the RRC based on his answers to

5  interview questions and non-kosher food purchases.  *Id.*; Tamayo Decl. ¶ 6.

6       According to Plaintiff, Defendant Tamayo told him on July 13, 2018, that the

7  reason why his application had not been processed was because kosher diets were

8  exclusively reserved for Orthodox Jewish prisoners, and that when his application was

9  processed, it was more likely than not that it would be denied since Plaintiff was not of the

10 Jewish faith.[4]  Smith Decl. ¶ 10; Dkt. No. 18-2 at 3.

11      Plaintiff also states that the answers which were submitted to the RRC on his

12 application under questions 4, 6, and 7 were not the actual answers that he gave to Pastor

13 Min during his interview on April 16, 2018.  Smith Decl. ¶ 6; Dkt. No. 18-2 at 2.  Plaintiff

14 described the correct answers during a deposition[5] taken in connection with this lawsuit on

15 October 15, 2019.  Dkt. No. 18-1.  Question 4 of the application asked how long the

---

[4] In reply, Defendants object to the admission into evidence Defendant Tamayo's comment regarding Kosher diets only being available to Jewish inmates.  Dkt. No. 22 at 7. Defendants assert that the statement is being offered for the truth of the matter asserted and is therefore inadmissible hearsay.  *Id.* at 8.  The objection is OVERRULED because Defendant Tamayo's statement is not hearsay under Rule 801(d)(2) of the Federal Rules of Evidence as an opposing party's statement.  Fed. R. Civ. P. 801(d)(2).

   Defendants also object to the admission of several declarations from other inmates submitted by Plaintiff in support of his opposition.  Dkt. No. 22 at 8.  The objection is moot because the Court did not find it necessary to consider those declarations.

[5] In reply, Defendants object to Plaintiff's submission of this deposition as evidence because it contains settlement discussions.  Dkt. No. 22 at 6-7.  Defendants assert that the entire transcript filed as Exhibit D should be excluded and not considered.  *Id.* at 7. However, the Court notes that nowhere in the transcript does it indicate that the deposition was solely for the purpose of settlement discussions.  Dkt. No. 18-1 at 28-50.  On the contrary, counsel states at the outset of the deposition: "we're here to take your deposition today related to lawsuit that you filed against a couple of the staff here at CTF related to a religious food request you've made back in 2018…" *Id.* at 29.  Accordingly, the Court finds striking the entire transcript is overly broad.  However, the objection to the parts of the deposition that includes settlement discussions is SUSTAINED.  Furthermore, the portion of Plaintiff's affidavit that refers to those settlement discussions will also not be considered.  Dkt. No. 22 at 7.

4

inmate had participated in the religious/spiritual activities, and the written response was "Recently. The service began in February 2018." Dkt. No. 16-1 at 20. Plaintiff stated in his deposition that the correct answer was March 2018. Dkt. No. 18-1 at 38. Question 6 asked for a description of the religious/spiritual needs as they pertain to food, and the written response was "No food made with the preservatives or additives." Dkt. No. 16-1 at 20. Question 7 asked for the "characteristics of the religious diet you selected that meet your religious/spiritual needs," and the written response stated, "Any food with preservatives or additives are not good. Vegetables and fruits are good. Only Fish are good, meat is not good." *Id.* Plaintiff stated in deposition that during the interview with Pastor Min, he only recalled being asked Questions 6 and 7 "in pertaining to the Ital diet," which was the diet he had previously requested specifically because it did not have preservatives and additives and was primarily a fish diet. Dkt. No. 18-2 at 38-39, 41. Plaintiff explained that he did eat foods with preservatives or additives because that was the only available food source that he had while incarcerated. *Id.* at 39. Plaintiff affirmed that the written responses on the interview questions were not the responses he recollected giving during the interview. *Id.* at 41.

### B. **Administrative Grievance**

Prior to the issuance of a denial of his application, Plaintiff submitted a grievance to the CTF appeals office on July 19, 2019, that was issued log number CTF- 18-02047. Atchley Decl., Ex. A at 5-7, (Dkt. No. 16-1); Vila Decl. ¶ 6, Ex. C, (Dkt. No. 16-4). In the appeal, Plaintiff claimed that he was the subject of religious discrimination because he had still not received a response to his application as of July 17, 2018. *Id.* He also claimed that Defendant Tamayo informed him that the KDP is reserved only for Orthodox Jewish inmates. *Id.* Plaintiff filed the grievance based on Defendant Tamayo's statement that his accommodation would likely be denied. Smith Decl. ¶¶ 10, 11; Dkt. No. 18-2. Plaintiff did not allege in this grievance that his application had actually been denied, since that had not yet occurred. *Id.*

The grievance bypassed the first level of review and received a second level review. Atchley Decl., Ex. A at 2.  Defendant Tamayo conducted the second level inquiry into Plaintiff's grievance.  Vila Decl., Ex. C at 28-29.  Defendant Tamayo submitted proposed findings and recommendations for review and approval as part of the second level grievance response to Defendant Atchley, who approved Defendant Tamayo's findings and recommendations on August 14, 2018.  *Id.*  Plaintiff contested Defendant Tamayo's finding and requested a third-level review, which included for the first time, the issue of his application being denied.  Vila Decl., Ex. B; Ex. C at 2 ¶ F; *id.* at 4 ¶ F.  On December 18, 2018, the grievance was reviewed and denied at the third level of review by Defendant Voong's office in Sacramento, based on the determination that Plaintiff's application was appropriately denied without discrimination.  Vila Decl. ¶ 6, Exs. A-B.  According to Plaintiff's Appellate Appeal History for third-level reviews, this appeal was the only one that Plaintiff exhausted concerning the issues in this case.  *Id.*

## C.     Plaintiff's Claims

Based on the allegations in the complaint, the Court found Plaintiff stated the following cognizable claims: (1) a violation of his First Amendment right to the free exercise of his religion; (2) a violation of Equal Protection based on the allegation that Plaintiff was discriminated against and was denied rights that are afforded other religions; and (3) a violation of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000c-a(a), based on his claim that the denial of a kosher diet created a "substantial burden" on the exercise of his religion.  Dkt. No. 4 at 3.

## II.    Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof

at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact.  *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir.

United States District Court
Northern District of California

1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.   Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and no longer left to the discretion of the district court.   *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).  An action must be dismissed unless the prisoner exhausted his available administrative remedies <u>before</u> he or she filed suit, even if the prisoner fully exhausts while the suit is pending.  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust."  *Jones v. Bock*, 549 U.S. 199, 217-18 (2007).  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.  *Id*. at 218.  In California,[6] the regulation

---

[6] The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides its inmates the right

requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)); *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer). California regulations also require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones*, 549 U.S. at 211. Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17. Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Id.* at 1172; *see id.* at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust). Once the defendant has carried that burden, the prisoner has

---

to file administrative appeals alleging misconduct by correctional officers. See id. § 3084.1(e). Under the current regulations, in order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through three levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee. *Id.* § 3084.7.

the burden of production.  *Id.*  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  *Id.*  But as required by *Jones*, the ultimate burden of proof remains with the defendant.  *Id.*

Defendants assert Plaintiff did not exhaust his claims against Defendants Atchley, Voong, or Friedman before filing suit.  Dkt. No. 16 at 20.  Plaintiff's allegations against Defendants Atchley and Voong are that they failed to modify "A. Tamayo's conflict of interest denial."  Dkt. No. 1 at 10-11.  Defendants assert that there is no allegation that these Defendants did anything other than adjudicate the grievance that Plaintiff relies on to demonstrate that he exhausted administrative remedies in this case, nor does the record show that Plaintiff later filed an administrative grievance to exhaust this claim against Defendants Atchley and Voong.  Dkt. No. 16 at 20.  Furthermore, Defendants assert that Defendant Friedman is not identified anywhere in the grievance.  Dkt. No. 1 at 17-20; Dkt. No. 16-4 at 12-19.  Plaintiff's only claim against Defendant Friedman was that he was a member of the Committee, but the evidence submitted by Defendants shows that Defendant Friedman was not present at the meeting when the decision was made on Plaintiff's application. Defendants also assert that Plaintiff was clearly familiar with the grievance process as his record shows that he submitted at least eight appeals from three different institutions that received a third-level review.  Dkt. No. 16 at 20; Dkt. No. 16-4 at 6-7.  Accordingly, Plaintiff could have, but did not, submit a subsequent administrative grievance regarding the alleged decisions of these Defendants.

In opposition, Plaintiff asserts that when prison officials address the merits of a grievance instead of enforcing a procedural bar or defect, the state's interests in administrative exhaustion have been served.  Dkt. No. 18 at 22.  He asserts that the grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he/she/may be sued.  *Id.*  Plaintiff asserts that he stated in the appeal that he was "now putting ALL Supervisory and Managerial staff on

United States District Court
Northern District of California

notice to protect [his] State and Federal Rights," that Defendant Tamayo signed off on the RRC's denial and Defendants Atchley and Voong are both "Managerial staff," such that they were effectively alerted to a problem.  *Id.* at 23.  In reply, Defendants assert that Plaintiff failed to exhaust his administrative remedies against Defendant Voong because he was never identified during the grievance process and the grievance procedures require that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or **person later named** by the appellant that was not included in the originally submitted CDCR Form 602."  Dkt. No. 22 at 3-4, citing Cal. Code Regs., tit. 15, § 3084.1(b) (emphasis added).

Plaintiff is correct and is essentially relying on the Supreme Court decision in *Jones v. Bock*, 549 U.S. 199.  In *Jones*, the Supreme Court held that because the Michigan Department of Corrections' procedures made no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion was unwarranted. *Jones*, 549 U.S. at 217.  The Court stated that the "name all defendants" requirement under the Sixth Circuit rule may promote early notice to those who might later be sued, but that has not been thought to be one of the leading purposes of the exhaustion requirement. *Jones*, 549 U.S. at 219 (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")).  The Court did not determine whether the grievances filed by petitioners satisfied the requirement of "proper exhaustion," but concluded that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.  *Id.*  (citation omitted).

Subsequently, the Ninth Circuit held that if an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted.  *Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016) (plaintiff's claim exhausted as to prison doctors named in federal action

where grievance plainly put prison officials on notice of the nature of the wrong alleged in federal action – denial of pain medication by defendant doctors – and prison officials easily identified the named prison doctors' involvement in the issue). Thus, a California inmate whose grievance failed to name all staff members involved in his case, as required by 15 Cal. Code Regs. § 3084.2(a)(3), nevertheless exhausted his claim of deliberate indifference to his serious medical needs because that claim was decided on its merits at all levels of review. *See id.* at 656-57.

In Plaintiff's case, prison officials decided the merits of his religious discrimination claim at the second and third level reviews, which were the only available levels of review because the matter was bypassed at the first level. *See supra* at 4-5; Dkt. No. 16-4 at 10. Even though Plaintiff's grievance was premature on the issue at the time he filed it, the RRC rejected Plaintiff's request while his grievance was pending such that the second and third level reviews went ahead and decided the issue of whether that rejection involved religious discrimination; both levels found that no discrimination took place. *Id.* Accordingly, the claim challenging the denial of his KDP application is exhausted. *See Reyes*, 810 F.3d at 656, 658.

However, because the administrative reviews only addressed the RRC's denial, the exhaustion is only with respect to the claim that the RRC wrongfully denied Plaintiff's application and therefore only against those involved in that decision.[7]  There is no allegation that Defendant Voong was involved in the RRC's decision, or that he was even aware of this particular claim before it came to his attention at the third level review. Therefore, in order to exhaust a claim against Defendant Voong for wrongfully rejecting this particular grievance at the third level review, Plaintiff had to file a separate grievance to that affect before filing this suit. He could have but did not. *See supra* at 5.

Based on the foregoing, the Court finds that Defendants have shown that Plaintiff

---

[7] Defendants appear to concede by their silence in this regard that the claim against Defendant Atchley is exhausted as he was undisputedly involved in that decision.

failed to properly exhaust all available administrative remedies with respect to his claim against Defendant Voong, but not with respect to any other Defendant.  In response, Plaintiff has failed to show that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *See Albino*, 747 F.3d at 1172.  Accordingly, Defendant Voong is entitled to summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative remedies with respect to any claim against him.  *Id*.

### B. <u>Individual Liability</u>

Defendants also assert that Plaintiff's allegations are not sufficient to establish Defendants Tamayo and Friedman's individual liability because they were not involved in the decision to deny Plaintiff's KDP application.  Dkt. No. 16 at 14.  Defendants also assert that Defendant Atchley's participation in Plaintiff's grievance and appeal is insufficient as a basis for liability.  *Id.* at 15.

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right.  *Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1085 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).  A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.  *See Leer*, 844 F.2d at 633; *see, e.g.*, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent 8th Amendment violation may be basis for liability).

///

### 1. <u>Defendants Tamayo and Friedman</u>

In support, Defendants Tamayo and Friedman attest to the fact that they were not involved in the decision to deny Plaintiff's KDP application.  Tamayo Decl. ¶ 4; Friedman

Decl. ¶ 4.  Their statements are corroborated by the RRC's Meeting Minutes of the June 28, 2018 meeting, which indicates that Defendants Tamayo and Friedman were absent from the meeting during which Plaintiff's KDP application was reviewed and denied. Tamayo Decl., Ex. A at 1; Dkt. No. 16-2 at 4.  Therefore, Defendants assert that these Defendants did not "personally participate" in denying Plaintiff's KDP application.  Dkt. No. 16 at 14.

In opposition, Plaintiff asserts that Defendant Tamayo told him on June 13, 2018, that kosher diets were reserved for Jewish prisoners only.  Dkt. No. 18 at 17.  Plaintiff asserts that his KDP application was subsequently denied, and that Defendant Tamayo "signed off" on the decision.  *Id.*  He also points out that his appeal on the matter was denied by Defendant Tamayo at the second level review.  *Id.*  With respect to Defendant Friedman, Plaintiff asserts that Defendant Friedman is a Jewish Rabbi and "routinely denies prisoners religious diet accommodations request for Kosher Diet unless a prisoner can 'prove' he was born Jewish or that he had been converted by a sanctioned Temple or Rabbi in free society."  *Id.* at 19.  Plaintiff asserts that Defendant Friedman is the only Jewish Rabbi on the RRC and "as such, he was a decision-maker member of the prison's RRC[] and was responsible for reviewing and considering prisoners' request for religious accommodation."  In reply, Defendants assert that Plaintiff has failed to rebut the evidence that Defendant Friedman was not present at the RRC meeting when his application was reviewed, even it if were true that Defendant Friedman routinely denies religious accommodations for the reasons asserted.  Dkt. No. 19 at 2.  Furthermore, Defendants assert that Plaintiff relies on inadmissible hearsay statements by Defendant Tamayo which cannot form a basis to dispute the admissible evidence submitted by Defendant Tamayo. *Id.* at 3.  They assert that Plaintiff has failed to produce any evidence that Defendant Tamayo's ministerial act of signing Plaintiff's form memorializing the denial was done with discriminatory intent.  *Id.*

Based on the foregoing, the Court finds that Plaintiff has shown that there remain

14

United States District Court
Northern District of California

genuine issues of material fact with regards to his claim against Defendant Tamayo.  The evidence must be viewed in the light most favorable to Plaintiff, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 631.  Although Defendant Tamayo was not present when the RRC decided to deny Plaintiff's application at the June 28, 2018 meeting, there is no dispute that she completed Part III of Plaintiff's application informing him of the RRC's decision, *see supra* at 4, and that she later conducted the second level review response denying Plaintiff's grievance on the matter.  Dkt. No. 16-4 at 39-40.  In his appeal, Plaintiff alleged that Defendant Tamayo told him that the KDP was reserved only for Orthodox Jewish inmates.  *See supra* at 5.  Defendants' objection to the admission of this statement is denied as explained above.  *See supra* at 4, fn. 4.  Based on her statement and the delay in his KDP application, Plaintiff claimed religious discrimination.  *Id.* Although the grievance contained allegations against her, Defendant Tamayo conducted the second level review and stated in her response that "CRM A. Tamayo was consulted and she asserted that she did not make any statement like the one claimed by the [Plaintiff]."  *Id.*  In reviewing the allegations against herself and rejecting the grievance, Defendant Tamayo clearly had a conflict of interest in the matter.  Furthermore, the Court notes that Defendant Tamayo is silent with respect to the allegation that she made such a statement to Plaintiff in the declaration submitted in this matter.  *Id.*   Dkt. No. 16-2. Clearly, there is a dispute over whether Defendant Tamayo made the statement.  Lastly, based on the undisputed fact that Defendant Tamayo rejected Plaintiff's grievance on the merits at the second level of review even though she was the subject of the appeal, the Court finds that there are disputed issues of material fact with respect to Defendant Tamayo's involvement in the deprivation of Plaintiff's rights.  *See Leer*, 844 F.2d at 633. Accordingly, Defendant Tamayo is not entitled to summary judgment on this ground.  *See Celotex Corp.*, 477 U.S. at 324.

With respect to Defendant Friedman, the Court finds there is no genuine dispute of

any material fact as to whether Defendant Friedman was present at the RRC meeting when Plaintiff's application was reviewed and denied.  Even if it were true that Defendant Friedman "routinely" denies religious accommodations as Plaintiff alleges, he fails to provide any evidence that Defendant Friedman was at all involved in the denial of Plaintiff's application in this instance.  In other words, it cannot be said that Defendant Friedman deprived Plaintiff of his religious freedom in the absence of evidence showing that Defendant Friedman did an affirmative act, participated in another's affirmative act or omitted to perform an act which he was legally required to do, that caused the constitutional deprivation.  *See Leer*, 844 F.2d at 633.  Accordingly, Defendant Friedman is entitled to summary judgment on all the claims against him because there is no basis to impose liability.  *Id.*; *see Celotex Corp.*, 477 U.S. at 323.

### 2.   <u>Defendant Atchley</u>

Defendants assert that the only allegation in the complaint against Defendant Atchley is his involvement in the second level review of Plaintiff's grievance.  Dkt. No. 16 at 15.  But as Plaintiff points out in opposition, Defendant Atchley was present at the RRC meeting when his application was denied, a fact that is undisputed.  Dkt. No. 18 at 17; *see supra* at 3.  Although Defendants assert in reply that Plaintiff cannot now impose liability on Defendant Atchley based on new allegations, the Court finds good cause to do so. Plaintiff alleged in the complaint that the RRC was comprised of Defendants Tamayo, Friedman and "other unknown defendants."  Dkt. No. 1 at 8.  Although he was unaware at the outset, Plaintiff would certainly have been allowed to amend his complaint to specifically allege that Defendant Atchley participated in the RRC decision denying his application once he discovered that Defendant Atchley was one of the "unknown defendants" alleged in the complaint.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (plaintiff should be given an opportunity through discovery to identify the unknown defendants unless it is clear that discovery would not uncover their identifies or that the complaint should be dismissed on other grounds); *also Brass v. County of Los Angeles*,

United States District Court
Northern District of California

328 F.3d 1192, 1195-98 (9th Cir. 2003) (district court has discretion to permit plaintiff to substitute named individuals for Doe defendants where he did not seek leave to amend to do so).  Furthermore, since he was involved in the RRC's decision, it cannot be said that Defendant Atchley's participation in the deprivation of Plaintiff's constitutional rights was based merely on his involvement in the appeals process as Defendants assert.  *See Ramirez v. Galaza*, 334 F/3d 850, 860 (9th Cir. 2003).  Lastly, the Court has already decided that the claim challenging the denial of his KDP application against any individual involved in the RRC decision was properly exhausted so that Plaintiff is not barred from proceeding on a claim against Defendant Atchley on that basis.  *See supra* at 10-12.  Accordingly, Defendant Atchley is not entitled to summary judgment on this ground.  *See Celotex Corp.*, 477 U.S. at 324.

Based on the foregoing discussion, all claims against Defendants Voong and Friedman have been dismissed and the only claims that remain are those against Defendants Tamayo and Atchley.  The Court will now consider the remaining claims against them on the merits.

### C.    First Amendment - Free Exercise of Religion Claim

Prisoners retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted).  But lawful incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (citation and internal quotation marks omitted).  For a prisoner to establish a free exercise violation, he therefore must show that a prison regulation or official burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).  A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. *Id.* at 884-85.  Rather, the sincerity test of whether

United States District Court
Northern District of California

the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies. *Id.* (finding district court impermissibly focused on whether consuming Halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith). The prisoner must show that the religious practice at issue satisfies two criteria:  (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns.  *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in *Shakur*, 514 F.3d at 884)

Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).  Allegations that prison officials refuse to provide a healthy diet conforming to sincere religious beliefs states a cognizable claim under § 1983 of denial of the right to exercise religious practices and beliefs. *See Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (Jewish inmate claiming denial of kosher diet), *cert. denied*, 510 U.S. 1192 (1994); *McElyea*, 833 F.2d at 198 (same); *Moorish Science Temple, Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982) (Muslim inmate claiming denial of proper religious diet).  The burden then falls on the prison officials to prove that the burden on plaintiff's exercise of religion was reasonably related to a legitimate penological objective.  *See Ashelman v. Wawrzaszek*, 111 F.3d 674, 677-78 (9th Cir. 1997) (applying test from *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), and *Turner v. Safley*, 482 U.S. 78 (1987), to determine reasonableness of decision denying Jewish inmate's request for an all-kosher diet).

Defendants assert that Plaintiff cannot establish that their alleged conduct substantially burdened the practice of his religion.  Dkt. No. 16 at 16.  They assert that although Plaintiff claims that they improperly considered his prior food purchases when considering his religious diet application, Dkt. No. 1 at 9-10, there is no evidence that the prior food purchases formed the basis of a denial by any Defendant.  Dkt. No. 16 at 16.  Rather, Defendants assert that the opposite is true.  *Id.*  Defendant Atchley states in his

18

United States District Court
Northern District of California

declaration that in his training and experience, "food purchases can be an indicator of whether an inmate is following their espoused diet, it has not been used on its own to deny [] a Religious Diet Application" at CTF.  Atchley Decl. ¶ 6.  Defendant Tamayo also states in her declaration that in her experience and training, "non-kosher food purchases are a consideration when reviewing an inmate's application, but by itself would not form the basis to deny an inmate's application to a Religious Diet Program."  Tamayo Decl. ¶ 7.  Based on these facts, Defendants assert they are entitled to summary judgment.

In opposition, Plaintiff asserts that it is undisputed that Defendants denied him access to a kosher diet.  Dkt. No. 18 at 11.  Plaintiff states that he sincerely believes that the kosher diet provided to Jewish inmates would be consistent with his religious faith.  *Id.*  Plaintiff asserts that although Defendants deny that his food purchases made prior to submitting his religious food application was the basis for the denial, they still fail to provide the actual basis for the denial.  *Id.* at 12.  Plaintiff asserts that in light of these "conflicting assertions" by Defendants, the Court should consider whether the real basis was Plaintiff not being registered as a Jewish prisoner.  *Id.*  Plaintiff also asserts that Defendants "incorrectly stated" in their summary judgment motion that Plaintiff's application was discussed and denied because of Plaintiff's response to interview questions six and seven, but that his application denial never specified which interview question(s).  *Id.*  Defendants argue in reply that Plaintiff fails to submit any evidence in opposition to show that it was not his responses to interview questions that led to the denial of his kosher diet application.  Dkt. No. 19 at 2.

Having reviewed the submitted briefs and documents in support and viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has shown there exist genuine issues of material fact that precludes summary judgment.  *See Celotex Corp.*, 477 U.S. at 324.  Defendants assert that there is no evidence that Plaintiff's prior food purchases was the basis of their denial.  However, it is undisputed that they actually did in fact deny his Kosher diet application based in part on the food purchases as stated in

United States District Court
Northern District of California

Plaintiff's application: "Denied based on answers to interview questions and non-Kosher food purchases." Dkt. No. 16-1 at 18. Plaintiff need only show that Defendants' actions resulted in a burden on the exercise of his religion. *McElyea*, 833 F.2d at 198. Plaintiff claims that he is a practicing Rastafarian and needs a special diet in accordance with his religious beliefs, which is supported by his detailed and lengthy responses in deposition. Smith Decl. ¶¶ 2, 3; Dkt. No. 18-1 at 28-50; *see Malik*, 16 F.3d at 333. Furthermore, Plaintiff's response to Question 8 of the interview stated, "RMA or Vegetarian is not good for my religion. Kosher is the closest diet to my religion." Dkt. No. 16-1 at 20. Defendants were aware of this information when they reviewed the application, and it was not for Defendants to determine what type of food or diet qualified or was inconsistent with Plaintiff's religious beliefs. If Plaintiff shows he had a sincerely held religious belief that a Kosher diet satisfied the tenets of his religion, then Defendants must show that denying him that accommodation was reasonably related to a legitimate penological interest. *See Ashelman*, 111 F.3d at 677-78. However, Defendants make no argument in this regard, having rested on their assertion that there is no evidence of a burden on Plaintiff's practice of religion. Accordingly, the Court finds there exist genuine issues of material fact with respect to the constitutionality of Defendants' actions.

Based on the foregoing, the Court finds summary judgment is not appropriate because there remain genuine issues of material facts with respect to Plaintiff's free exercise of religion claim. *See Celotex Corp.*, 477 U.S. at 323. Accordingly, Defendants are not entitled to summary judgment on this claim.

### D.   RLUIPA Claim

Defendants assert that Plaintiff fails to establish their liability on his RLUIPA claim, and that the Eleventh Amendment forecloses Plaintiff's claim for official-capacity damages under RLUIPA. Dkt. No. 16 at 14.

RLUIPA targets two areas of state and local action: land-use regulation, 42 U.S.C. § 2000cc (RLUIPA § 2), and restrictions on the religious exercise of institutionalized

persons, § 2000cc-1 (RLUIPA § 3).  Section 3 of RLUIPA provides: "No government shall

impose a substantial burden on the religious exercise of a person residing in or confined to

an institution, as defined in section 1997 [which includes state prisons, state psychiatric

hospitals, and local jails], even if the burden results from a rule of general applicability,

unless the government demonstrates that imposition of the burden on that person (1) is in

furtherance of a compelling governmental interest; and (2) is the least restrictive means of

furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  The statute

applies "in any case" in which "the substantial burden is imposed in a program or activity

that receives Federal financial assistance."  42 U.S.C. § 2000cc-1(b)(1).  RLUIPA also

includes an express private cause of action that is taken from RFRA: "A person may assert

a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain

appropriate relief against a government."  42 U.S.C. § 2000cc-2(a); cf. § 2000bb-1(c).  For

purposes of this provision, "government" includes, inter alia, States, counties,

municipalities, their instrumentalities and officers, and "any other person acting under

color of state law."  42 U.S.C. § 2000cc-5(4)(A).  "Congress has explicitly directed us to

resolve any ambiguities in RLUIPA 'in favor of a broad protection of religious exercise, to

the maximum extent permitted.'"  *Khatib v. County of Orange*, 639 F.3d 898, 900-01 (9th

Cir. 2011) (en banc) (citing and adding emphasis to 42 U.S.C. § 2000cc-3(g)).

RLUIPA does not define "substantial burden."  *San Jose Christian College v.

Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).  Construing the term in accord with its

plain meaning, the Ninth Circuit holds that "a 'substantial burden' on 'religious exercise'

must impose a significantly great restriction or onus upon such exercise."  *Id.*; *see Greene

v. Solano County Jail*, 513 F.3d 982, 988 (9th Cir. .2008) (jail's outright ban prohibiting

plaintiff, a maximum security prisoner, from attending group religious worship services

substantially burdened his ability to exercise his religion).  A burden is substantial under

RLUIPA when the state "'denies [an important benefit] because of conduct mandated by

religious belief, thereby putting substantial pressure on an adherent to modify his behavior

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

and to violate his beliefs.'"  *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981)).

Defendants assert that Plaintiff fails to show that they placed a "substantial burden" on his religious practice.  Dkt. No. 16 at 19.  They make the same argument as in Plaintiff's free exercise claim -- that he cannot show a substantial burden because the alleged improper conduct, *i.e.*, consideration of Plaintiff's prior food purchases, was not the basis upon which his application was denied.  *Id.*  Defendants assert that they considered Plaintiff's response to interview questions, which indicated that his religious need was to have "[n]o food made with the preservatives or additives" and that "meat is not good."  *Id.*  Defendants assert his interview responses were inconsistent with the kosher food provided by the CDCR, which are pre-packaged by an off-site vendor and therefore contain the greatest amount of preservatives when compared with other diets that are offered.  *Id.*  They also point out that the kosher diet is not free of meat, and that the only diet available that does not offer meat is the vegetarian diet.  *Id.* at 20.  Defendants assert, therefore, that since the kosher diet was the least compatible diet offered by the CDCR, denying Plaintiff's application for kosher meals cannot have substantially burdened his religious beliefs.  *Id.*

In opposition, Plaintiff asserts that Defendants' denial of access to a kosher diet "is and continues to place a substantial burden on his religious exercise."  Dkt. No. 18 at 15. Plaintiff asserts that he is pressured to significantly modify his religious behavior, and in doing so "has significantly violated his religious belief."  *Id.*  As evidence, Plaintiff submits his deposition wherein he explained that the tenets of the Rastafarian diet involved adhering "to the Hebrew dietary law as it related to the consumption of ceremonially clean and unclean animals in the books of Leviticus and Deuteronomy," and was able to explain in detail what were considered clean or unclean animals and the other specific parameters for eating meat.  Dkt. No. 18-1 at 35-36.  Plaintiff also explained why the alternative diets were not sufficient.  *Id.*  Accordingly, Plaintiff has satisfied his burden of submitting

evidence showing that the denial of a kosher diet placed a substantial burden on the practice of his religion. *See Shakur*, 514 F.3d at 888.

Once a plaintiff makes the requisite showing under RLUIPA of a substantial burden on the exercise of his religion, it becomes the defendant's responsibility to establish that the burden furthers "a compelling government interest" and does so by "the least restrictive means." *Greene*, 513 F.3d at 988 (quoting 42 U.S.C. §2000cc-1(a) and § 2000cc-2(b)) (finding district court erred in granting summary judgment where a genuine issue of fact remained as to whether the jail's total ban on group religious worship by maximum security prisoners was the least restrictive means of maintaining jail security). However, Defendants make no argument in this regard, having only rested on their argument that Plaintiff's religious exercise was not substantially burdened. Dkt. No. 16 at 20. As with Plaintiff's Free Exercise claim, it matters not how Defendants arrived at their decision to deny Plaintiff's application for a Kosher diet, only that they did in fact deny it and that the denial resulted in a substantial burden of Plaintiff's practice of religion. It was therefore Defendants' responsibility to show that their denial furthers a "compelling government interest" and does so by "the least restrictive means." *Greene*, 513 F.3d at 988. They have made no such showing.

On the other hand, Defendants are correct that the Eleventh Amendment immunity bars damages claims under RLUIPA. The availability of money damages from state officials sued in their official capacity turns on whether the State has waived its Eleventh Amendment immunity from such suits or congress has abrogated that immunity under its power to enforce the Fourteenth Amendment. *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1112 (9th Cir. 2010). The Ninth Circuit has specifically found that California did not waive its Eleventh Amendment immunity against RLUIPA claims for damages under either RLUIPA or the Rehabilitation Act Amendments of 1986. *Id.* at 1111-14. Consequently, RLUIPA does not authorize money damages against state officials, whether sued in their official or individual capacities. *See Jones v. Williams*, 791 F.3d 1023, 1031

United States District Court
Northern District of California

(9th Cir. 2015).  Accordingly, to the extent that Plaintiff is seeking damages for violations of his rights under RLUIPA, such a claim for money damages must be dismissed as barred by the Eleventh Amendment.

Based on the evidence presented, the Court finds that Plaintiff has submitted sufficient evidence to show there remain disputed issues of material facts.  *See Celotex Corp.*, 477 U.S. at 324.  Accordingly, Defendants are not entitled to summary judgment on this claim.  However, Plaintiff is barred by the Eleventh Amendment from obtaining money damages as a form of relief if he should prevail on this claim.

### E.    Equal Protection Claim

Defendants assert that Plaintiff's equal protection claim ultimately fails because there is no evidence that an inmate from any other religion was permitted a religious diet when his prior food purchases are inconsistent with that diet.  Dkt. No. 16 at 17.

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (Buddhist prisoners must be given opportunity to pursue faith comparable to that given Christian prisoners), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).  *Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987).  The court must consider whether "the difference between the defendants' treatment of [the inmate] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted) (finding district court erroneously applied rational basis review to plaintiff's claim that defendants violated equal protection clause by providing only Jewish inmates with kosher meat diet and remanding claim so record could be more fully developed regarding defendants' asserted penological interests).

An inmate "'must set forth specific facts showing a genuine issue' as to whether he

24

was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur*, 514 F.3d at 884-85.  *See, e.g.*, *Hartman v. California Dep't of Corrections*, 707 F.3d 1114, 1124 (9th Cir. 2013) (affirming dismissal of equal protection claim based on denial of request for a paid Wiccan chaplain where pleadings suggested a reasoned and vetted denial – paid Wiccan chaplain not necessary because a volunteer Wiccan chaplain provides services at prison and staff chaplains are available to provide inmates with religious assistance – rather than discriminatory intent).

Defendants assert that there is no evidence that an inmate from any other religion is permitted a religious diet when his prior food purchases are inconsistent with that diet. Dkt. No. 16 at 17.  In opposition, Plaintiff contends that the CDCR provides kosher diets to Jewish inmates while denying him access to the same diet. Dkt. No. 18 at 8.  Plaintiff asserts that the kosher diet serves the same purpose for both Jewish and Rastafarian inmates, and yet he has not been permitted to receive a kosher diet. *Id.*  Therefore, Plaintiff asserts, Defendants are treating him differently from similarly situated Jewish inmates. *Id.*  In reply, Defendants assert there is no evidence that Plaintiff was denied a kosher diet because of his religious faith rather than the reasons set forth by the RRC.  Dkt. No. 22 at 5.  Defendants also assert that there is nothing preventing Plaintiff from reapplying for the kosher diet, and that the only thing preventing him from doing so is his own belief that doing so is futile. *Id.*; Dkt. No. 22-1.

Having reviewed the submitted briefs and documents in support and viewing the evidence in the light most favorable to Plaintiff, the Court finds that there remain disputed issues of material fact. *See Celotex Corp.*, 477 U.S. at 323.  Plaintiff claims that Defendant Tamayo made a statement to him, indicating that only those of the Jewish faith were granted kosher diets. *See supra* at 5.  Defendant Tamayo does not deny making this statement in her declaration. Dkt. No. 16-2.   This silence on the part of Defendant

1  Tamayo must be construed in the light most favorable to Plaintiff: that Defendant Tamayo

2  actually made the statement which is evidence of discriminatory treatment.

3      Based on the evidence presented, the Court finds there remain genuine issues of

4  material facts with respect to Plaintiff's equal protection claim.  *See Celotex Corp.*, 477

5  U.S. at 323.  Accordingly, Defendants are not entitled to summary judgment on this claim.

6      **F.     Qualified Immunity**

7      Defendants assert in the alternative that they are entitled to qualified immunity

8  which bars liability.  Dkt. No. 16 at 21.

9      The defense of qualified immunity protects "government officials . . . from liability

10  for civil damages insofar as their conduct does not violate clearly established statutory or

11  constitutional rights of which a reasonable person would have known."  *Harlow v.*

12  *Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "'all but the

13  plainly incompetent or those who knowingly violate the law;'" defendants can have a

14  reasonable, but mistaken, belief about the facts or about what the law requires in any given

15  situation.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S.

16  335, 341 (1986)).  "Therefore, regardless of whether the constitutional violation occurred,

17  the [official] should prevail if the right asserted by the plaintiff was not 'clearly

18  established' or the [official] could have reasonably believed that his particular conduct was

19  lawful."  *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

20      A court considering a claim of qualified immunity must determine whether the

21  plaintiff has alleged the deprivation of an actual constitutional right and whether such right

22  was clearly established such that it would be clear to a reasonable officer that his conduct

23  was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223

24  (2009) (overruling the sequence of the two-part test that required determination of a

25  deprivation first and then whether such right was clearly established, as required by

26  *Saucier*, 533 U.S. at 194); *Henry A.*, 678 F.3d at 1000 (qualified immunity analysis

27  requiring (1) determining the contours of the clearly established right at the time of the

28

United States District Court
Northern District of California

26

United States District Court
Northern District of California

challenged conduct and (2) examining whether a reasonable official would have understood that the challenged conduct violated such right).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  *See Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory).  "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

### 1.    Free Exercise Clause and RLUIPA Claims

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants are entitled to qualified immunity on the Free Exercise Clause and RLUIPA claims.  In evaluating Defendants' conduct, the Court considers only the information before Defendants at the time they made their decision, i.e., Plaintiff's application containing the interview answers as provided by the chaplain and Plaintiff's prior food purchases.  The information Plaintiff later provided in deposition, contesting the accuracy of the answers provided in the application, is not relevant because there is no allegation or evidence that Defendants were aware of the inaccuracies during the relevant period.

Assuming Defendants' conduct violated Plaintiff's rights under the first prong, Defendants have shown the absence of clearly established law by which a reasonable official would have understand that his conduct violates that right under the second prong. *See Romero*, 931 F.2d at 627.  A right is clearly established if it were "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

appropriate.  *Saucier*, 533 U.S. at 202.  The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct.  *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).

Defendants assert that courts have consistently held that prison officials can evaluate evidence of food purchases that are inconsistent with a professed religious belief. Dkt. No. 16 at 22, citing *Curry v. California Dep't of Corr.*, 2013 WL 75769, at *7 (N.D. Cal. June 4, 2013) (evidence of plaintiff's snack food consumption could be considered to evaluate the sincerity of his religious beliefs), aff'd sub nom. *Curry v. California Dep't of Corr. & Rehab.*, 616 F.App'x 265 (9th Cir. 2015) (affirming grant of summary judgment on plaintiff's RLUIPA and free exercise claim where defendants met their burden of showing denial of Kemenic food diet was the least restrictive means of furthering prison's compelling interests and was reasonably related to those interests); *Lute v. Jonson*, 2012 WL 913749, *7 (D. Idaho 2012).  Defendants also assert that prison officials can use that information to assist in evaluating the sincerity of an inmate's religious beliefs, and that courts have consistently held that prison officials may do so before providing an inmate with a religious diet.  Dkt. No. 16 at 23, citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) ("prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic") and *Resnick v. Adams*, 348 F.3d 763, 771 n.8 (9th Cir. 2003) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) ("It is appropriate for prison authorities to deny a special diet if an inmate is not sincere in his religious beliefs.").  The Court agrees that this body of cases indicate the absence of a clearly established right that Plaintiff's prior food purchases may not be considered when evaluating a religious diet accommodation.  Accordingly, Defendants' use of prior food purchases in denying Plaintiff's application for a religious diet did not violate a clearly established right.

In opposition, Plaintiff requests the Court take judicial notice of four cases by which it appears he is contesting Defendants' qualified immunity argument.  Dkt. No. 18 at 20-

21.  However, as Defendants assert in reply, Dkt. No. 22 at 5-6, these cases do not satisfy Plaintiff's burden of proving the existence of a clearly established right.  *See Maraziti*, 953 F.2d at 523.  Two of the cases, *Russell v. Wilkinson* and *Hodges v. Sharon*,[8] involve circumstances where an inmate was already granted kosher meals, but the privilege was later revoked because of evidence that the inmate was purchasing non-kosher food.  *Id.*  In the third case, *Caruso v. Zenon*, 2005 WL 5957978, (D, Colo. July 25, 2005), the district court determined that inmate-plaintiff's non-halal purchases did not establish an insincerity of belief.  *Id.* at 6.  Lastly, *Saenz v. Friedman*, Case No. 17-0046-SK-PR (N.D. Cal.), involves a matter that was settled and voluntarily dismissed with prejudice.  *Id.*  It cannot be said that these four cases constitute a "robust consensus of cases of persuasive authority" by which Defendants would have been on notice that their particular conduct was unlawful.  *Tuuamalemalo*, 946 F.3d at 477.  Accordingly, summary judgment based on qualified immunity is appropriate with respect to Plaintiff's claims under the Free Exercise Clause and RLUIPA.  *Saucier*, 533 U.S. at 202

## 2.  <u>Equal Protection</u>

Defendants are not entitled to qualified immunity on Plaintiff's equal protection claim because they fail to make any specific arguments in this regard.  Dkt. No. 16 at 21-22.  Rather, it is well established under the Equal Protection Clause that inmates who adhere to a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).  *Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987).  Accordingly, it cannot be said that a reasonable official would have understood that it was lawful to discriminate between inmates of different religions in the

---

[8] *Russell v. Wilkinson*, 79 F. App'x 175 (6th Cir .2003); *Hodges v. Sharon*, No. 2016 WL 6542696, (E.D. Cal. Nov. 3, 2016).  Dkt. No. 18 at 20-21; Dkt. No. 22 at 5-6.

absence of legitimate penological interests.  As discussed above, there are disputed issues as to whether Defendants did or did not act in a discriminatory manner.  *See supra* at 25.  Accordingly, Defendants motion based on qualified immunity with respect to Plaintiff's equal protection claim is DENIED.

**III**.    **Referring Case to Settlement Proceedings**

The Court has established a Pro Se Prisoner Settlement Program under which certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for settlement.  In light of the existence of triable issues of fact as to whether Defendants Tamayo and Atchley violated Plaintiff's rights under Equal Protection, the Court finds the instant matter suitable for settlement proceedings.  Accordingly, the instant action will be referred to a neutral Magistrate Judge for mediation under the Pro Se Prisoner Settlement Program.

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1.    Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** with respect to the claims against Defendant Voong for failure to exhaust administrative remedies and against Defendant Friedman for lack of individual liability.  *See supra* at 12, 15.  Accordingly, the claims against Defendants M. Voong and Y. Friedman are **DISMISSED**.  Defendants Voong and Friedman shall be terminated from this action.  Furthermore, although the motion for summary judgment based on the merits of Plaintiff's Free Exercise Clause and RLUIPA claims is denied, it is **GRANTED** based on qualified immunity.  However, the motion based on the merits and on qualified immunity with respect to Plaintiff's Equal Protection claim is **DENIED**.

2.    The instant case is **REFERRED** to Judge Robert M. Illman pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims in this action,

as described above.  The proceedings shall take place **within ninety (90) days** of the filing date of this order.  Judge Illman shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within ten (10) days after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

3.     Other than the settlement proceedings ordered herein, and any matters Magistrate Judge Illman deems necessary to conduct such proceedings, this action is hereby **STAYED** until further order by the court following the resolution of the settlement proceedings.

4.     The Clerk shall send a copy of this order to Magistrate Judge Illman in Eureka, California.

**IT IS SO ORDERED.**

Dated:  _August 10, 2020_____

BETH LABSON FREEMAN
United States District Judge

Order Granting and Denying MSJ; Referring to PSP
PRO-SE\EJD\CR.19\00537Smith_msj-deny.vadas

United States District Court
Northern District of California